# CASE NO. 15-11595-EE

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

ANTHONY RODRIGUEZ,
Plaintiff/Appellant,

v.

CITY OF DORAL and J.C. BERMUDEZ,
Defendants/Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case No. 12-20700-CIV-COOKE

---

## INITIAL BRIEF OF APPELLANT

Martin E. Leach
FEILER & LEACH, P.L.
901 Ponce de Leon Blvd.
Penthouse Suite
Coral Gables, FL 33134
Tel: 305/441-8818
Fax 305/441-8081

*Attorneys for Appellant*

Rodriguez v. City of Doral et. al.
Case No. 15-11595-EE

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Following is a listing of the trial judge(s), attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case:

1.    The Hon. Marcia Cooke, District Court Judge

2.    Michael R. Piper, attorney for defendant/appellee

3.    Christopher J. Stearns, attorney for defendant/appellee

4.    Martin E. Leach, attorney for plaintiff/appellant

5.    Harriet R. Lewis, attorney for defendant/appellee

6.    Gary Oldehoff, attorney for defendant/appellee

7.    Anthony Rodriguez, plaintiff/appellant

8.    City of Doral, defendant/appellee

9.    Juan Carlos Bermudez, defendant/appellee

## STATEMENT REGARDING ORAL ARGUMENT

Appellant ANTHONY RODRIGUEZ hereby respectfully requests oral argument. This appeal involves political belief and association, which are core activities protected by the First Amendment, where the district court found evidence of protected activity and direct evidence of retaliatory motive, but concluded that Appellant voluntarily resigned. Given the district court's analysis and the confusion it will cause in the future if cited as authority, Appellant believes that oral argument is important and would materially assist this Court in determining the propriety of the district court's order granting Appellees' motions for summary judgment.

## TABLE OF CONTENTS

**PAGE**

CERTIFICATE OF INTERESTED PERSONS

AND CORPORATE DISCLOSURE STATEMENT . . . . . . . . . . . . . . . . . C1 of 1

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . .  i

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

CERTIFICATE OF TYPE SIZE AND STYLE . . . . . . . . . . . . . . . . . . . . . . . vi

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

STATEMENT OF CASE AND FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**THE DISTRICT COURT ERRED IN GRANTING SUMMARY**

**JUDGMENT IN FAVOR OF DEFENDANTS ON DETECTIVE**

**RODRIGUEZ'S FIRST AMENDMENT RETALIATION CLAIM**

**BROUGHT PURSUANT TO 42 U.S.C. §1983**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

I.      **The District Court Misapplied the Rules Regarding Consideration of Motions for Summary Judgment by Improperly Viewing Certain Evidence at the Summary Judgment Stage** . . . 9

II.     **The District Court Misapplied the Law in Concluding that Plaintiff's Did Not Suffer an Adverse Employment Action in the Loss of His Job Because the Evidence, Properly Viewed on Summary Judgment, does not Support the Claim that he Voluntarily Resigned** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

A.  Plaintiff was terminated "effective immediately" when the termination letter was handed to him. . . . . . . . . . . . . . . . . . . . . . . . 17

B.  Plaintiff's purported resignation was tendered after it was clearly communicated that he was being terminated without cause as an "at-will" employee Defendant's . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

C.  Plaintiff's  resignation was coerced and tendered under duress. .23

1.  Whether Plaintiff was given some alternative to resignation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

2.  Whether Plaintiff understood the nature of the choice he was given  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

3.  Whether Plaintiff was given a reasonable time in which to

choose . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

4.  Whether Plaintiff was permitted to select the effective date

of the resignation  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

5.  Whether Plaintiff had the advice of counsel  . . . . . . . . . 29


CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

CERTIFICATE OF SERVICE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

## TABLE OF CITATIONS

**PAGE**

<u>CASES</u>

*Adickes v. S.H. Kress & Co.,*

398 U.S. 144 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Allen v. Tyson Foods, Inc.,*

121 F.3d 642 (11th Cir.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*\*Andazola v. Logan's Roadhouse, Inc.,*

871 F.Supp.2d 1186 (N.D. Ala. 2012) . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Anderson v. Liberty Lobby, Inc.,*

477 U.S. 242 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Chertkova v. Connecticut General Life Insurance Co.,*

92 F.3d 81 (2nd Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Elrod v. Burns,*

427 U.S. 347 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Equal Employment Opportunity Commission v. University of Chicago Hospitals,*

276 F.3d 326 (7th Cir.2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Gonzalez v. Lee County Housing Authority,*

161 F.3d 1290 (11th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*\*Hargray v. City of Hallandale,*

57 F.3d 1560 (11th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Killinger v. Samford Univ.*,

    113 F.3d 196 (11th Cir.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Luna v. Walgreen Co.*,

    347 Fed.Appx. 469 (11th Cir.2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Moorer v. City of Montgomery*,

    293 Fed.Appx. 684 (11th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Payne  v. Crane Co.*,

    560 F.2d 198 (5th Cir.1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*\*Rossi v. Fulton County*,

    2013 WL 1213149 (N.D. Ga. Jan. 31, 2013) . . . . . . . . . . . . . . . . . 24, 25, 26

*Rutan v. Republican Party of Illinois*,

    497 U.S. 62 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Thomas v. Dillard Department Stores, Inc.*,

    116 F.3d 1432 (11th Cir.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Tipton v. Bergrohr GMBH-Siegen*,

    965 F.2d 994 (11th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Venero v. City of Tampa*,

830 F. Supp. 1457, 1459 (M.D. Fla. Sept. 23, 1993) . . . . . . . . . . . . *passim*

*aff'd,* 40 F.3d 389 (11th Cir. 1994)


**STATUTES**

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

42 U.S.C. §1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1


## CERTIFICATE OF TYPE SIZE AND STYLE

This brief is typed in Times New Roman 14 point font.


## PRELIMINARY STATEMENT

The decision appealed from was rendered by the Honorable Marcia Cooke, district court judge.  The decision is unreported.

## STATEMENT OF JURISDICTION

The Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, as this appeal is from a final decision of the United States District Court for the Southern District of Florida.

## STATEMENT OF THE ISSUES

I.    Whether the District Court Erroneously Analyzed the Rules Regarding Consideration of Motions for Summary Judgment by Improperly Viewing the Evidence at the Summary Judgment Stage.

II.   Whether the District Court Erroneously Analyzed the Law in Concluding that Plaintiff Did Not Suffer an Adverse Employment Action in the Loss of His Job Because the Evidence, Properly Viewed on Summary Judgment, does not Support the Claim that he Voluntarily Resigned.

## STATEMENT OF THE CASE AND FACTS

### Statement of the Case

This brief is filed on behalf of the Plaintiff, ANTHONY RODRIGUEZ,
("Detective Rodriguez" or "Plaintiff") who filed an action against Defendants THE
CITY OF DORAL and its mayor JUAN CARLOS BERMUDEZ, (collectively
"Defendants" or when individually "City of Doral" or "Mayor Bermudez") to recover
damages pursuant to the Civil Rights Act of 1871, 42 U.S.C. §1983, for the violation
of Detective Rodriguez's First Amendment right of political association. (D.E. 30).
According to the Second Amended Complaint, on January 29, 2009, Detective
Rodriguez was terminated as a City of Doral police detective. (D.E. 30 at ¶ 14). After
Detective Rodriguez's termination, the Florida Department of Law Enforcement
("FDLE") launched an investigation in response to allegations of misconduct by the
Chief of Police, Ricardo Gomez, ("the Chief"), and other City of Doral high ranking
officials. The FDLE investigation revealed, via two internal probes, that the City of
Doral Police Department's termination of Detective Rodriguez was politically
motivated. (*Id.* at ¶ 16). Additionally, the FDLE ultimately concluded that Mayor
Bermudez was responsible for Detective Rodriguez's termination, and that he had
targeted Detective Rodriguez because of his political affiliation to City of Doral
Councilwoman Sandra Ruiz, one of Mayor Bermudez's political enemies. *See id.*

After the FDLE investigation was concluded, Detective Rodriguez filed suit,

1

alleging that his employment was unlawfully terminated on the orders of Mayor Bermudez because of his political association with Councilwoman Sandra Ruiz. Relying upon case-law holding that "political belief and association constitute the core of those activities protected by the First Amendment," *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 69 (1990)(*quoting Elrod v. Burns*, 427 U.S. 347, 356 (1976)), Plaintiff alleged a violation of his constitutional rights enforceable under 42 U.S.C. §1983. (D.E. 30 at ¶1). In the general allegations applicable to both counts of the complaint, Plaintiff alleged that he "was employed as a police detective from January 2008 through January 29, 2009, at which point he was terminated. . ." (D.E. 30 at ¶11). Regarding his job, he alleged that his "position as a detective is not one in which party affiliation is an appropriate requirement for the effective performance of the job because his position as a detective did not implicate partisan political concerns in it effective functioning"; and further alleged that "[p]olitical loyalty to the mayor. . . who is not Plaintiff's supervisor and not in his chain of command, is not an appropriate requirement for effective performance for the position of detective." (D.E. 30 at ¶12). Finally, Plaintiff alleged that his "employment was actually terminated in violation of his First Amendment right to political association on the orders of the mayor. . .because Plaintiff had supported one of the mayor's political opponents." (D.E. 30 at ¶15). Incorporating the general allegations, Count I brought a claim against the City of Doral and Count II brought a claim against

2

Mayor Bermudez in his individual capacity; both counts alleged that Mayor Bermudez orchestrated the termination of Plaintiff's employment in violation of clearly established rights under the First Amendment and Fourteenth Amendment of the United States Constitution. (D.E. 30 at ¶26, ¶31).

After discovery, Defendants moved for summary judgment on numerous grounds, focusing primarily on the alleged absence of protected activity by Detective Rodriguez and insufficient evidence of a retaliatory motive by Mayor Bermudez. (D.E. 81)(City of Doral's motion for summary judgment); (D.E. 84)(Mayor Bermudez's motion for summary judgment). The district court analyzed Defendants' primary arguments, and rejected them. Specifically, the district court concluded that "Doral, the hiring authority in this instance, cannot demonstrate that political affiliation with the mayor is an appropriate requirement for the effective performance of [Detective Rodriguez's] job." (D.E. 116-6)(Summary Judgment Order, p. 6). Regarding protected activity, the district court concluded that "it is apparent that Rodriguez's conduct was political in nature, worthy of protection under the First Amendment of the U.S. Constitution." (D.E. 116-8, 9).

Finally, the district court found sufficient direct evidence that Plaintiff's political association was the motivating factor in the decision to order the termination of Detective Rodriguez's employment. (D.E. 116-7)(Summary Judgment Order, p. 7)("Rodriguez has posited enough direct evidence to dispense of the burden-shifting

regime required for retaliation claims. . .”). Specifically, the direct evidence involved a phone conversation between Mayor Bermudez and the Chief that was confirmed by two separate witnesses, one of whom was with Mayor Bermudez when the conspiracy was discussed (City of Doral Councilman Pedro Cabrera); and the other witness was with the Chief when it was discussed (City of Doral Police Commander James Montgomery). According to Councilman Cabrera, Mayor Bermudez told him "I was talking to the chief about a detective Tony Rodriguez, who is Sandra's spy in the police department and is the one that gets her all her information. And I told the chief, he better put an F ending to him or I will." (D.E.97-8, p. 32-33)(Deposition of Pedro Cabrera,pp. 32-33). Commander Montgomery could overhear Mayor Bermudez's voice on the phone, stating that the Chief needed to deal with this "'asshole Tony,'" or the Mayor would deal with him. . . . the Chief stated, 'The Mayor wants me to get rid of somebody.' . . . 'Well it doesn't matter; I'll take care of the situation.'" (D.E. 97-4, ¶5-7)(Declaration of James Montgomery, ¶5-7).

Along with the issues discussed above, in the City of Doral's motion for summary judgment (though not Mayor Bermudez's), it argued "Rodriguez made a conscious choice to resign instead of being terminated." (D.E. 81-10). The district court accepted this argument. For ease of comprehension and to avoid repetition, we will discuss the district court's order on this issue in great detail in the argument section of this brief.

## Statement of the Facts Relevant to the Issues on Appeal

Because only the issue surrounding Detective Rodriguez's departure from employment is relevant to the issues on appeal, we will briefly outline them here, and discuss them in further detail in the argument section. On January 29, 2008, at 2:00 p.m., Detective Rodriguez received a call from his immediate supervisor, Sergeant George Gulla, ("Sergeant Gulla"), telling him to come to the Chief's office. (D.E. 97-1, p. 10-11)(Declaration of Anthony Rodriguez, ¶15). When Detective Rodriguez entered the Chief's office, the Chief was behind his desk, Lieutenant Alfaro was to his left and Sergeant Gulla was to his right. *Id.* Detective Rodriguez sat down and the Chief pushed a file to him which contained a termination letter that gave no reason. *Id.* The letter said: "Please be advised that effective immediately, your employment with the City of Doral is hereby terminated." *Id.*

When given the termination letter, Detective Rodriguez was in shock and asked the Chief, "why?" *Id.* The Chief responded: "I don't have to give you a reason. This is an at-will police department." *Id.* The Chief then said, "I didn't sign the termination letter, the city manager signed the letter." *Id.*

After having terminated Detective Rodriguez, the Chief then gave him the option to resign instead and gave him five minutes to go out and think about it. *Id.* Detective Rodriguez exited the office and spoke to a secretary in the offices at the Police Benevolent Association ("PBA") who advised him that it would be easier to

obtain future employment with a resignation on his record instead of a termination.

*Id.* Detective Rodriguez then returned to the Chief's office, stated he would resign given that he had no alternative to remain employed.    *Id.* After a short period, Detective Rodriguez was presented with a resignation letter that had been drafted for him.    *Id.* Detective Rodriguez was very upset and distraught and began crying. He signed the letter of resignation under duress.    *Id.* As stated by Detective Rodriguez: "I felt I was left with no choice, because I was being terminated no matter what I said or did as explained by the Chief because it was an 'at-will' department. Either way, my  employment was being terminated under the at-will employment in the City of Doral."    *Id.*

About an hour later, Detective Rodriguez contacted the PBA again and was advised by them to rescind his resignation letter and fax it to the city manager's office, which he did. *Id.* at ¶16 (Exhibit G).  In due course, he received a letter from City Manager Yvonne Soler-McKinley denying his request to rescind the resignation.

*Id.* at ¶16 (Exhibit H).  Detective Rodriguez  then attempted to appeal his termination.  *Id.* Under the procedures in the City of Doral, he first sent a letter to his direct supervisor, then to the Chief, and finally to City Manager Soler-McKinley.  *Id.* (Exhibit I, J, and K). All requests to appeal the termination were denied.    *Id.*

## SUMMARY OF ARGUMENT

The district court's summary judgment ruling should not be permitted to stand.

In reaching its decision, the court misapplied the law and failed to view some of Detective Rodriguez's evidence in the light most favorable to him.

**I.**   The district court misapplied the law by improperly disregarding and weighing Plaintiff's testimony and other evidence in violation of the rules regarding consideration of motions for summary judgment.  Though the district court found evidentiary significance in who first suggested resignation, the district court failed to view the evidence in this regard in the light most favorable to Detective Rodriguez by concluding that he, not the Chief, first suggested resignation in lieu of termination.

**II.**  The district court misapplied the law in finding that Detective Rodriguez voluntarily resigned instead of suffering an adverse employment action in the loss of his job.   Plaintiff suffered an adverse employment action – whether it is called a termination or resignation – for three reasons.

First, Plaintiff was terminated "effective immediately" when Chief Gomez handed him the termination letter.  Thus, effective as of that moment, Plaintiff's employment was terminated.  That he was subsequently given the option to resign does not change the fact that he was terminated "effective immediately" when the letter was handed to him.

Second, Plaintiff's purported "voluntary" resignation was tendered after it was clearly communicated that he was being terminated without cause as an "at-will" employee.  Such a loss of employment is actionable.  Specifically, as an "at-will"

employee with no property interest in his employment, Detective Rodriguez had no option to keep his job because when an employer who can fire an employee for any reason — a good reason, a bad reason, or no reason at all — acts in a manner that communicates to a reasonably prudent person that he or she is terminated or about to be terminated, and the employee subsequently resigns, the employee (Detective Rodriguez) has suffered an actionable "constructive discharge" or an "adverse employment action." This decisively distinguishes the case relied upon by the district court, which involved an employee with civil service protection who could "stand pat and fight" his termination of employment.

Third, applying the applicable five part test, Plaintiff's resignation was coerced and tendered under duress. First, Detective Rodriguez was given no alternative that would have resulted in his continued employment because there were no accusations to fight in the termination without cause of his "at-will" employment. Second, the choice provided – between "at-will" termination without cause or resignation – is not a choice as contemplated by the case-law, where choices were available to avoid termination. Third, Detective Rodriguez was given five minutes to decide, which is not a reasonable time within the meaning of the case-law. Fourth, Detective Rodriguez was not allowed to choose an effective date – it was immediate termination or resignation effective immediately. Fifth, Detective Rodriguez did not have advice of counsel and immediately after consulting with counsel, Detective Rodriguez

8

immediately rescinded the purported resignation.

## ARGUMENT

### THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS ON DETECTIVE RODRIGUEZ'S FIRST AMENDMENT RETALIATION CLAIM BROUGHT PURSUANT TO 42 U.S.C. §1983

The district court erred in granting summary judgment in Defendants' favor for a number of reasons, which analytically fall into two categories: mistakes of law and mistakes of material fact. The two categories are distinct but overlap somewhat because the district court refused to view certain evidence in the light most favorable to Plaintiff, which contributed to a misapplication of the law in reaching the decision that Plaintiff "voluntarily resigned." The district court's summary disposition of Detective Rodriguez's claim should be reversed as a result of either of these infirmities. In the alternative, pursuant to this Court's *de novo* review of the evidence, the summary judgment should be overturned, and the case remanded for a trial on the merits.

I. **The District Court Misapplied the Rules Regarding Consideration of Motions for Summary Judgment by Improperly Viewing Certain Evidence at the Summary Judgment Stage.**

In reviewing the district court's summary judgment ruling, this Court considers the record *de novo*, and is governed by the same principles as those that should be applied in the district court. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.1997); *Killinger v. Samford Univ.*, 113 F.3d 196, 198 (11th Cir.1997). The basic

9

issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

The district court's task at the summary judgment stage is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined to issue finding; it does not extend to issue resolution. Consequently, the district court is forbidden from making credibility determinations, *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir.1992) ("'The evidence of the non-movant is to be believed.'")(*quoting Anderson*, 477 U.S. at 255) and must view all justifiable inferences in favor of the non-moving party. *Tyson Foods, Inc.*, 121 F.3d at 646 (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). For purposes of this appeal, it is important to emphasize that in viewing the evidence, any perceived ambiguities must be resolved in favor of the non-moving party, Plaintiff here. *Gonzalez v. Lee County Housing Authority*, 161 F.3d 1290, 1294 (11th Cir. 1998)("In determining whether genuine issues of material fact exist, we **resolve all ambiguities** and draw all justifiable inferences in favor of the non-moving party.")(emphasis added)*citing* (*Anderson*, 477 U.S. at 255. As the Court warned in *Anderson*:

> Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts **are jury functions**, not

those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. **The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor**.

477 U.S. at 255 (emphasis added). If, upon reviewing the record in the light most favorable to the non-moving party, the appellate court determines that there are genuine issues of material fact, a reversal is mandated. *Tyson Foods, Inc.*, *supra*; *Tipton*, *supra*; *Killinger, supra*.

While the district court's order recites the applicable principles in considering summary judgment motions, it does not, most respectfully, apply them to the record in this case. Specifically, there is a dispute on the factual question of who suggested resignation. This fact is material because, as discussed *infra* at pp. 13-14, the district court buttressed its decision to disregard the short period of time given for Plaintiff to choose between resignation or termination with the incorrect factual finding that "Rodriguez clearly requested the option to resign." (D.E. 116-10)(Summary Judgment Order, p. 10).

In its Statement of Undisputed Material Facts, Defendants claimed "After speaking with the PBA, Rodriguez offered to resign instead of being terminated." (D.E. 82, ¶29)(Defendant's Statement of Undisputed Facts, ¶29). In Plaintiff's Rule 56.1 Response, Plaintiff denied this material fact in paragraph 29, stating:

> 29.    Controverted in part. Chief Gomez brought up resignation, not Plaintiff. (Gulla, ¶15);(Rodriguez, ¶15). At that time, Plaintiff had already been terminated and was under duress. (Rodriguez, ¶15-16).

11

(D.E. 94-5)(Plaintiff's Rule 56.1 Response, ¶29). The cited parts of the record in

support of the response were contained in the declarations filed by Plaintiff and by

Sergeant George Gulla. Plaintiff's declaration stated:

> 15. On January 29, 2008, at 2:00 p.m., I received a call from Sergeant Gulla telling me to come to Chief Gomez's office. I said to Sergeant Gulla, "I'm being terminated." Gulla did not respond. When I entered the Chief's office, Chief Gomez was behind his desk, Lieutenant Alfaro was to his left and Sergeant Gulla was to his right. I sat down and Chief Gomez pushed a file to me which contained a termination letter that gave no reason. The letter said: "Please be advised that effective immediately, your employment with the City of Doral is hereby terminated." (Exhibit E). When given the termination letter, I was in shock and asked Chief Gomez, "why?" Chief Gomez said "I don't have to give you a reason. This is an at-will police department." Chief Gomez said, "I didn't sign the termination letter, the city manager signed the letter." **After having terminated me, Chief Gomez gave him the option to resign instead and gave me five minutes to go out and think about it. I exited the office and spoke to a secretary in the offices at the PBA who advised me that it would be easier to obtain future employment with a resignation on my record instead of a termination. I returned to Chief Gomez's office, and after a short period, was presented with a resignation letter that had been drafted for him. I was very upset and distraught and began crying. I signed the letter of resignation under duress.** (Exhibit F). **I felt I was left with no choice, because I was being terminated no matter what I said or did as explained by the Chief because it was an "at-will" department. Either way, my employment was being terminated under the at-will employment in the City of Doral.**

(D.E.97-1, p. 10-11)(Rodriguez, ¶15)(emphasis added)). Sergeant Gulla's declaration

stated, in relevant part:

> 16. Shortly thereafter, Detective Rodriguez walked in. I gave my seat to him. Chief Gomez handed him the termination letter. He

asked why he was being terminated. The Chief repeated his earlier statement about being an "at will" employer. Lieutenant Alfaro then blurted out, "I've never seen anything like this before in my life. In all my 30 years, I've never seen anything like this!" **At one point, the Chief offered Detective Rodriguez the option to resign, and he offered to write him a letter of recommendation to any future employer of his choosing.** Detective Rodriguez asked for a minute and stepped outside of the Chief's office. The Chief kept saying that the matter was out of his hands, and he did not like what was happening. He characterized the moment as one of the hardest of his life.

17.    Detective Rodriguez re-entered the office and asked to be allowed to exercise the option to resign. The Chief agreed to have the letter prepared. By then, Detective Rodriguez had begun to cry, so I escorted him to the IA office down the hall from the Chief's office. We exchanged comments about their surprise at the eventual outcome and waited together, repeatedly going over the facts. The Chief returned with the resignation letter, and Detective Rodriguez signed it under the duress of the situation.

(D.E. 97-2, p. 8-9)(Gulla, ¶16-17)(emphasis added)).

In the district court's order granting summary judgment, the court made contradictory findings regarding the issue of resignation versus termination. The district court first acknowledged that it was a disputed fact as to who suggested resignation in lieu of termination, but concluded "It does not matter who suggested the options, which is subject to dispute. . . It only matters that Rodriguez had the alternative to resigning."    (D.E. 116-10)(Summary Judgment Order,  p. 10). However, in analyzing one of the elements, the district court made a contrary factual finding, stating "Rodriguez clearly requested the option to resign." (D.E. 116-10)((Summary Judgment Order,  p. 10).  In support of this finding, the district court

cited to page 142 of Plaintiff's deposition.   However, Plaintiff's testimony was that

he did not recall asking for the option to resign, and only agreed that if that is what

Sergeant Gulla said in his testimony -- which Defendant's counsel erroneously

claimed was Sergeant Gulla's testimony – then that would more than likely be what

happened because he was "more composed at the time than I was."  (D.E. 83-

1)(Deposition of Rodriguez, p. 142).   Of course, that was **not** Sergeant Gulla's

testimony.   As set forth above, Sergeant Gulla testified that the Chief offered the

option to resign instead of being terminated.  (*See supra* at p. 13)(D.E. 97-2, p. 8-

9)(Gulla, ¶16-17)).

In the order denying reconsideration, the district court again failed to view the

evidence in the light most favorable to Plaintiff, and quoted only part of the testimony

of Detective Rodriguez and Sergeant Gulla.   Regarding the deposition testimony of

Detective Rodriguez, the district court quoted only the underlined portion of his

testimony, though the bolded section sets forth Detective Rodriguez's testimony as

to what happened:

> Q. All right.  And Sergeant Gulla gave a statement where he said
> that you requested permission to resign.
>
> Do you remember if that is accurate, that you first requested that,
> or if they provided you with the opportunity?
>
> A. **I don't if there was a miscommunication there.**
>
> **I don't know if there was – if I asked for the option, or
> because a letter was being typed up, and when I returned back I**

**said that I would resign, I don't know what way it went.**

Q. If Sergeant Gulla in his testimony said that you clearly said, do I have the option to resign, and can I go outside and call the PBA –

A. If that's what he said then more than likely that's what happened.

He was more composed at the time than I was.

Q. Okay. It's clearly in his statement, and clearly that's what he said.

A. That's fine.

That's fine.

Q. <u>You said, can I have an opportunity to resign, and then you went outside and that's when you called the PBA; correct.</u>

A. <u>That is correct.</u>

(D.E. 83-1)(Rodriguez, p. 142). As can be seen, Defendant's counsel created doubt in Detective Rodriguez's mind by claiming that Sergeant Gulla testified as Defendant's counsel claimed. Of course, as noted above, Sergeant Gulla did not say what Defendant's counsel claimed. As set forth above, Sergeant Gulla testified, in relevant part:

16.    Shortly thereafter, Detective Rodriguez walked in. I gave my seat to him. Chief Gomez handed him the termination letter. He asked why he was being terminated. The Chief repeated his earlier statement about being an "at will" employer. Lieutenant Alfaro then blurted out, "I've never seen anything like this before in my life. In all my 30 years, I've never seen anything like this!" **At one point, the Chief offered Detective Rodriguez the option to resign, and he offered to write him a letter of recommendation to any future**

> **employer of his choosing.** Detective Rodriguez asked for a minute and
> stepped outside of the Chief's office. The Chief kept saying that the
> matter was out of his hands, and he did not like what was happening.
> He characterized the moment as one of the hardest of his life.

(D.E. 97-2, p. 8-9)(emphasis added)). That the Chief brought up resignation was

confirmed by Detective Rodriguez in his declaration as well, as set forth above. (D.E.

97-1, p. 10-11). Thus, the Court's conclusion that Plaintiff sought the option to

resign is not consistent with viewing the evidence in the light most favorable to

Plaintiff as required in construing a motion for summary judgment. *See Gonzalez,*

*supra,* 161 F.3d at 1294.

## II. The District Court Misapplied the Law in Concluding that Plaintiff Did Not Suffer an Adverse Employment Action in the Loss of His Job Because the Evidence, Properly Viewed on Summary Judgment, does not Support the Claim that he Voluntarily Resigned.

Plaintiff suffered an adverse employment action in the loss of his job –

whether it is called a termination or resignation – for three reasons. First, Plaintiff

was terminated "effective immediately" when the Chief handed him the termination

letter. Second, Plaintiff's purported resignation was tendered after it was clearly

communicated that he was being terminated without cause as an "at-will" employee.

Third, Plaintiff's resignation was coerced and tendered under duress.

In its order, the district court did not address two of the three arguments made

by Plaintiff, only addressing the third argument, whether Plaintiff's resignation was

coerced or tendered under duress. Relying only upon *Venero v. City of Tampa,* 830

F. Supp. 1457, 1459 (M.D. Fla. Sept. 23, 1993), *aff'd,* 40 F.3d 389 (11th Cir. 1994),

which the district court characterized as standing for the proposition that "a voluntary

resignation in lieu of termination does not constitute an involuntary resignation. . .in

light of the factors used to determine voluntariness," the district court held that "[t]he

factors demand the same result here." (D.E. 116-10)(Summary Judgment Order, p.

10). Most respectfully, this conclusion is simply incorrect and the holding of

*Venero* does not apply to the facts and circumstances of this case. Before turning to

the issue addressed by the district court, we first address the first two arguments made

in Plaintiff's response, which the district court did not address.

### A.    Plaintiff was terminated "effective immediately" when the termination letter was handed to him.

The first argument – which the district court did not address – demonstrated

that Plaintiff was terminated immediately upon the delivery of the termination letter.

Specifically, it is undisputed that on January 29, 2009, at approximately 2:30 p.m.,

Plaintiff reported to Chief Ricardo Gomez's office and was handed a termination

letter that said: "Please be advised that **effective immediately**, your employment

with the City of Doral is hereby terminated." (D.E. 97-1, p. 23)(Declaration of

Anthony Rodriguez)(Exhibit E))(emphasis added). Thus, effective as of that moment,

Plaintiff's employment was terminated. That he was subsequently given the option

to resign – or requested the option to resign as Defendants claim – does not change

the fact that he was terminated "effective immediately" when the letter was handed

to him.  In the order, the district court failed to address this undisputed evidence, which requires reversal.

**B.    Plaintiff's purported resignation was tendered after it was clearly communicated that he was being terminated without cause as an "at-will" employee**

The second argument – which the district court also did not address – revolves around the important distinguishing characteristic between the instant case and every case Plaintiff has found in which a choice between termination and resignation was found voluntary.  Specifically, as an "at-will" employee with no property interest in his employment, Plaintiff had no option to "stand pat and fight" for his job. Given this employment relationship, the issue then is:  when an employer who can fire an employee for any reason — a good reason, a bad reason, or no reason at all — acts in a manner that communicates to a reasonably prudent employee that he is terminated or about to be terminated, and the employee subsequently resigns, does that amount to either a "constructive discharge," or an "adverse employment action" that rises to the level of an actual termination.  As will be seen, the answer is clearly yes because the "at-will" nature of the City of Doral police department decisively distinguishes those cases, such as the leading case of *Hargray v. City of Hallandale*, 57 F.3d 1560 (11th Cir. 1995),  where an employee could "stand pat and fight" to challenge the threat of termination of employment instead of resigning.

The facts related to the termination of Plaintiff clearly reflect that he was

terminated ***without cause and had no option to prevent or fight it.***   As mentioned above, the Chief handed Plaintiff a file with a letter terminating his employment "effective immediately."   Thereafter, according to Plaintiff:

> When given the termination letter, I was in shock and asked Chief Gomez, "why?"  Chief Gomez said **"I don't have to give you a reason. This is an at-will police department."**   Chief Gomez said, "I didn't sign the termination letter, the city manager signed the letter."  After having terminated me, Chief Gomez gave him the option to resign instead and gave me five minutes to go out and think about it.

(D.E. 97-1, p. 9-10)(Rodriguez, ¶15)(emphasis added).   Sergeant George Gulla, who was also present in the room, confirms that Plaintiff was terminated without cause. (D.E. 97-2, p. 9)(Gulla, ¶15)("After reading the letter, I looked up at the Chief and asked why.  The Chief said that Doral was an 'at will employer, and they did not have to give a reason.'").   Indeed, in his declaration filed in this matter, Chief Gomez confirmed this.  (D.E. 83-3, p. 6)(Declaration of Chief Ricardo Gomez, ¶24)("I informed Rodriguez that he was being terminated.  I reminded him that Doral was an 'at will' employment city and that he could be terminated for any reason.").

Under these facts, Plaintiff's subsequent resignation does not transform his termination into a "voluntary" resignation.   The court's decision in *Andazola v. Logan's Roadhouse, Inc.*, 871 F.Supp.2d 1186, 1207-09 (N.D. Ala. 2012), thoroughly analyzed the issue on this point.   There, the court held that a jury could conclude that an employee who resigned after she was "advised to quit because [she] was about to be fired" was, in fact, terminated because (1) she was working for an "at-will"

employer and (2) the information communicated to her would lead a reasonable person to believe her employment was going to be terminated.  In reaching this conclusion, the court canvassed the case-law on the issue as follows:

> The major premise of defendant's motion for summary judgment — indeed, the metaphorical linchpin upon which all other arguments hinge — is the contention that plaintiff "did not suffer any adverse employment action. Plaintiff voluntarily resigned from her employment at Logan's, and her claim that she was `discharged' is baseless."  .  .  .
>
> .  .  . the present case raises a much more interesting issue; that is: when an Alabama private employer, who can fire an employee for any reason — a good reason, a bad reason, or no reason at all, so long as the basis for termination is not a violation of federal employment discrimination statutes — acts in a manner that communicates to a reasonably prudent employee that she is about to be terminated, and the employee subsequently resigns, does that amount to either a "constructive discharge," or an "adverse employment action" that rises to the level of an actual termination?
>
> Federal circuit courts of appeals tend to view cases that present such fact patterns in subtly but, nevertheless, substantively different manners. Some circuits analyze such factual scenarios as if they were a sub-category of "constructive discharges," while other circuits treat them as if they amount to an "actual discharge." The Seventh Circuit, for example, has held that, "[w]hen an employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated, and the plaintiff employee resigns, the employer's conduct may amount to [a] constructive discharge." *Equal Employment Opportunity Commission v. University of Chicago Hospitals*, 276 F.3d 326, 332 (7th Cir.2002).  .  .  .
>
> The Second and Eighth Circuits, on the other hand, have characterized fact patterns that would lead a reasonably prudent person to believe that her tenure had been terminated as an "actual termination." *See Chertkova v. Connecticut General Life Insurance Co.*, 92 F.3d 81, 88 (2nd Cir. 1996) ("An actual discharge ... occurs when the employer uses language or engages in conduct that `would logically lead a prudent

person to believe his tenure has been terminated.'").   .   .

The Eleventh Circuit fits into the cleavage between the conflicting positions sketched above, and holds that circumstances like those described require an "analysis of the employer's intent" — an inquiry into the totality of circumstances that "must be undertaken with close scrutiny of the evidence in each case." *Thomas v. Dillard Department Stores, Inc.*, 116 F.3d 1432, 1434, 1435 (11th Cir.1997). The *Thomas* panel approvingly cited opinions of the former Fifth Circuit and the Second and Fourth Circuits: i.e., *Payne v. Crane Co.*, 560 F.2d 198, 199 (5th Cir.1977) (holding that an actual discharge occurs when an employer "by acts or words, shows a clear intention to dispense with the services of an employee").   .   .

In short, within the Eleventh Circuit, "[t]he proper legal standard requires analysis of the employer's intent, which may be inferred not only from words but also from conduct, as well as the specific circumstances of the challenged job action." *Thomas*, 116 F.3d at 1437 (emphasis supplied); *see also Luna v. Walgreen Co.*, 347 Fed.Appx. 469, 473 (11th Cir.2009) (same). "[I]t is also clear in light of the case law that the lack of specific words [e.g., `you are fired'] is not dispositive." *Thomas*, 116 F.3d at 1437 (emphasis and alteration supplied) (*citing Chertkova*, 92 F.3d at 88, and *Service News*, 898 F.2d at 962).   .   .

*Andazola*, 871 F.Supp.2d at 1207-09.

Applying these principles to the facts of this case, Plaintiff suffered an adverse employment action in the  loss of his job – whether it is called a termination or resignation – because he worked for an "at-will" department.  Plaintiff was terminated as an "at-will" employee and not for misconduct.  As in *Andazola*, because the City of Doral has an "at will" police department – employees can be fired for a good reason, a bad reason, or for no reason at all – there was nothing Plaintiff could do to keep his job and, as a result, his subsequent resignation does not alter the fact that he

was, in fact, subject to an adverse employment action in the loss of his job.

The "at-will" nature of Plaintiff's employment decisively distinguishes the case relied upon by the district court, *Venero v. City of Tampa, supra*, 830 F. Supp. 1457 (M.D. Fla. Sept. 23, 1993), and renders it inapplicable to this case. In *Venero*, the officer was accused of misconduct and told he would be terminated from his employment with the City of Tampa police department if he did not resign. The City of Tampa's police department is governed by "the policy of the Tampa Code," *id.* at 1460, which provides civil service protection – "reasonable alternatives" – to termination without cause. *Id.* at 1459. In addition, because the officer was told he was being terminated for misconduct, that triggered entitlement to "a reasonable expectation of continued employment under the 'Police Officer's Bill of Rights' contained in Florida Statutes Section 112.532." *Id.* Thus, as the court concluded, the officer in *Venero* had an alternative to keep his job, which the officer was found to be aware of:

> In deciding whether the employee was given an alternative, the court can consider the employee's personal knowledge of reasonable alternatives and if the employee is aware of such alternatives, no duress is present. . . . Plaintiff had worked with the Tampa Police Department for 26 years, advancing from a patrolman to become a major, making it probable that **he knew that his rights were under the policy of the Tampa Code as well as those in the 'Police Bill of Rights' contained in Florida Statutes Section 112.532.** Therefore, he can be held to have at least constructive knowledge of the **alternatives provided by such policies and was not restricted to the alternatives allegedly suggested by Smith**.

*Id.* at 1459-60 (emphasis added).

In contrast to the employee in *Venero* – who had alternatives to fight the threatened for cause termination of his employment -- Plaintiff worked for an "at-will" police department where he had no alternative to fight the termination of his employment which was "at-will" and without cause.   In the order, the trial court failed to address this issue and misapplied *Venero* to this case.  Accordingly, this Court should reverse.

### C.     Plaintiff's  resignation was coerced and tendered under duress.

Finally, even if the analysis of  *Hargray* applies, Plaintiff's resignation was involuntary as a matter of law because obtained through coercion or duress.   The applicable law on this issue is not in dispute.  Specifically, where an employee with a property right in his job resigns in lieu of threatened termination, the rule in the Eleventh Circuit is that "[a]n employee's resignation will be deemed involuntary where the employer (1) forces the resignation by coercion or duress, or (2) obtains the resignation by deceiving or misrepresenting a material fact to the employee." *Hargray*, 57 F.3d at 1568.  As recognized by the district court in its order, the following factors guide a court's determination of whether a resignation was obtained by coercion or duress:

> (1) whether the employee was given some alternative to resignation; (2) whether the employee understood the nature of the choice he was given; (3) whether the employee was given a reasonable time in which to choose; (4) whether the employee was permitted to select the effective

date of the resignation; and (5) whether the employee had the advice of counsel.

*Hargray*, 57 F.3d at 1568.  We will apply each of these factors separately.

### 1. Whether Plaintiff was given some alternative to resignation:

In the order under review, the district court concluded that "Rodriguez had a choice between termination and resigning."  (D.E. 116-10)(Summary Judgment Order, 10).  Most respectfully, that is not a choice – and not the type of choice contemplated by the case-law.  In order to be voluntary, ***there must be an alternative that would allow the employee to remain employed***.  Thus, in *Hargray*, the employee had the option to fight the criminal charges against him and, if he prevailed, keep his job.  That he chose resignation instead was a voluntary choice because "where an employee is faced with such unpleasant alternatives are nevertheless voluntary because the fact remains that plaintiff had a choice.  Plaintiff could stand pat and fight." *Hargray*, 57 F.3d. at 1568.  Similarly, in the case relied upon by the district court, *Venero*, the employee had an alternative to fight for his job as he had "rights [] under the policy of the Tampa Code as well as those in the 'Police Bill of Rights' contained in Florida Statutes Section 112.532." *Venero*, 830 F. Supp. at 1459.  Because these alternatives were available, the *Venero* Court held that the resignation was voluntary.  This case is a far cry from *Venero* or *Hargray* as Plaintiff had no alternative to keep his job.

The case most analogous to the instant case is *Rossi v. Fulton County*, 2013

WL 1213149 (N.D. Ga. Jan. 31, 2013), in which the court emphasized that a choice

between resignation or termination was not a choice.  The court reasoned:

> Here, in contrast, Plaintiff was not accused of any misconduct but
> instead was simply told by Manning that he was moving in a different
> direction and that her services were no longer needed. (D ¶ 107; P. Resp.
> ¶ 107). Plaintiff was presented only with the option of retiring or being
> terminated and losing her pension benefits. (D ¶¶ 108–09; P. Resp. ¶¶
> 108–09). **There were no accusations to fight, and no choice that
> could result in her continued employment. As a result, the
> undersigned finds that Plaintiff's resignation was coerced and
> tendered under duress.** Further underscoring the coercive nature of
> Plaintiff's alleged "choice" to resign is the evidence that when Poole was
> given the same options, she did not agree to retire and was nevertheless
> officially terminated three days after Plaintiff's "resignation" was
> official. (P ¶ 286; D. Resp. ¶ 286; Poole Dep., Exh. 14 [Doc. 191–1 at
> 33] ). Consequently, the undersigned finds that there was nothing
> voluntary about Plaintiff's retirement.

*Rossi*, 2013 WL 1213149 (emphasis added).  *See and compare Moorer v. City of*

*Montgomery*, 293 Fed.Appx. 684, 690-91 (11th Cir. 2008)(finding the employee, Mr.

Moorer, had alternative to retain his employment and therefore no duress: "The

district court must assess whether real alternatives were offered using an objective

standard. . . .  When Provitt instructed Moorer to get off the lot, the record suggests

that Moorer had the choice to remain. . . . Also, when Moorer left the lot, the record

shows that he had the choice to return. . . .Finally, after the mayor's assistant advised

Moorer that he should return to work within three days or risk being found to have

voluntarily resigned his position, it appears that Moorer not only had a choice to

return, but knew that he must exercise this choice. . . .Thus, because Moorer

voluntarily resigned by leaving the lot and failing to return although he had other options and knew the risk of not exercising those other options, he was not forced to resign by coercion or duress . . . .").

Applying these factors to the facts of this case, Plaintiff's resignation was involuntary. The facts are undisputed. Plaintiff was called to the Chief's office, and provided no advance notice that he was going to be terminated. (D.E. 97-1, p. 9-10)(Rodriguez, ¶15). After being handed a letter stating he was "terminated immediately," Plaintiff asked why he was being terminated, and was told there was no reason, that the City of Doral was an "at-will" department and he could be terminated for no reason at all. *Id.* Thus, Plaintiff had no option to stay and fight for his job. As outlined in the preceding section, there was nothing to fight over as his termination was "at-will" and without cause. This clearly distinguishes *Hargray* and *Venero*, where the employees had a choice to fight to keep their jobs through the civil service system that prohibited "at-will" termination of employment. This case is just like *Rossi* because "[t]here were no accusations to fight, and no choice that could result in [his] continued employment." *Rossi*, 2013 WL 1213149. Consequently, as in *Rossi*, "Plaintiff's resignation was coerced and tendered under duress." *Id.*

### 2. Whether Plaintiff understood the nature of the choice he was given:

In the order under review, the district court concluded that "Rodriguez understood the nature of the choice he was given. This is evident from his request to

consult with an attorney at the Police Benevolent Association, which suggested 'he resign so that it will be easier for him to get a job at another police department.'"
(D.E. 116-10)(Summary Judgment Order, 10).    Most respectfully, as noted in the previous section, the choices provided – between "at-will" termination without cause or resignation – is *not* a choice as contemplated by the cases, where the issue is what choices were available to remain employed.    In addition, Plaintiff was given the option to resign and five minutes to make a decision. (D.E. 97-1, p. 9-10)(Rodriguez, ¶15). Plaintiff spoke to someone at the PBA office, who suggested resignation would make future employment easier to obtain.  *Id.*  Plaintiff returned to the Chief's office, broke down and cried, and indicated he would sign a resignation letter.  *Id.*  The Chief's secretary quickly typed it up and Plaintiff signed it "under duress."  *Id.*  As stated by Plaintiff: "I felt I was left with no choice, because I was being terminated no matter what I said or did as explained by the Chief because it was an 'at-will' department."  *Id.*  An hour thereafter, after speaking with the PBA again, Plaintiff faxed a letter rescinding the resignation.  (D.E. 97-1, p. 10)(Rodriguez, ¶16).  City Manager Soler-McKinley sent a letter the following day denying Plaintiff's request to rescind the resignation, further confirming that he had no choice regarding the termination of his employment in the first place.  *Id.* (Ex. H).  Thus, viewed in the light most favorable to Plaintiff a jury could conclude that, to the contrary, that Detective Rodriguez was not given a real choice at all.

### 3. Whether Plaintiff was given a reasonable time in which to choose:

In the order under review, the district court concluded that "Although I should consider whether Rodriguez was given a reasonable time in which to choose, its importance is minimized because Rodriguez clearly requested the option to resign." (D.E. 116-10)(Summary Judgment Order, 10).   There are two problems with this conclusion.   First, as set forth above, *see supra* at pp. 11-16, it is a disputed fact as to whether the Chief suggested the option to resign or if Plaintiff did.   Thus, the district court's conclusion that Plaintiff sought the option to resign is not consistent with viewing the evidence in the light most favorable to Plaintiff as required in construing a motion for summary judgment.   *See Gonzalez, supra*, 161 F.3d at 1294.   Second, even if Plaintiff suggested the option to resign, no case suggests that this is material to the analysis of whether sufficient time was given to consider the option. Moreover, regarding how much time must be provided, the case discussed by the district court, *Venero*, held that two days was enough time to "think and reason before making the decision to resign." *Venero, supra*, 830 F.Supp. at 1460.    However, Plaintiff was not given two days (or even two hours), he was given five minutes. (D.E. 97-1, p. 9-10)(Rodriguez, ¶15).   In research regarding this issue, we have not found a single case holding that such a short time is sufficient to pass muster under *Hargray* and its progeny.

### 4. Whether Plaintiff was permitted to select the effective date:

In the order under review, the district court concluded that "[t]he record is devoid of enough facts for me to assess the fourth factor. However, it is irrelevant since Rodriguez resigned at his own suggestion after a consultation with the PBA." (D.E. 116-10)(Summary Judgment Order, 10). First, as set forth above, *see supra* at pp. 12-15, it is a disputed fact as to whether Chief Gomez suggested the option to resign or if Plaintiff did. Thus, the district court's conclusion that Plaintiff sought the option to resign is not consistent with viewing the evidence in the light most favorable to Plaintiff as required in construing a motion for summary judgment. *See Gonzalez, supra*, 161 F.3d at 1294. Second, also set forth above, Plaintiff had already been given a termination letter with an immediate effective date, so there was no effective date that could be selected. (D.E. 97-1, p. 23)(Declaration of Anthony Rodriguez)(Exhibit E)("Please be advised that **effective immediately**, your employment with the City of Doral is hereby terminated.")(emphasis added)). Finally, and most respectfully, to argue that he could have "selected a resignation date," (D.E. 81, p. 9), especially given that he attempted to rescind the resignation within an hour, *see supra* at p. 6, is, at best, facetious.

**5. Whether Plaintiff had the advice of counsel:**

In the order under review, this Court did not address this factor. However, Plaintiff did not have the opportunity to consult with an attorney during the five minutes he was allowed to leave the room. (D.E. 97-1, p. 9-10)(Rodriguez, ¶15).

When he did speak with an attorney, he sought to rescind his resignation, which was within an hour of signing the resignation letter.   (D.E. 97-1, p. 10)(Rodriguez, ¶16).

## CONCLUSION

Based upon the foregoing arguments and citations to authority, Plaintiff, ANTHONY RODRIGUEZ, respectfully requests that this Court reverse the summary judgment entered in favor of Defendants CITY OF DORAL and J.C. BERMUDEZ, and remand for trial on the merits.

**FEILER & LEACH, P.L.**
Attorneys for Plaintiff/Appellant
901 Ponce de Leon Boulevard
Penthouse Suite
Coral Gables, Florida 33134
Telephone: (305) 441-8818
Email:  mel@flmlegal.com

By:_____
       Martin E. Leach
       Florida Bar No. 0037990

## CERTIFICATE OF COMPLIANCE

This brief contains 8,945 words as calculated by Corel WordPerfect 9.0 and was typed in 14 point Times New Roman.

**FEILER & LEACH, P.L.**
Attorneys for Plaintiff/Appellant
901 Ponce de Leon Boulevard
Penthouse Suite
Coral Gables, Florida 33134
Telephone: (305) 441-8818

By:_____
       Martin E. Leach

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 23, 2015, I electronically filed the foregoing document with the Clerk of the Court using ECF. I also certify that the foregoing document is being served this day on all counsel or pro se parties identified on the attached Service List by Electronic Mail **and** U.S. Mail.

BY: _____

## SERVICE LIST

**Michael Piper, Esq./Christopher Stearns, Esq.**
Johnson, Anselmo, Murdoch, et al
2455 E. Sunrise Blvd, Ste 1000
Fort Lauderdale, Florida 33304
(954) 463-0100 Telephone
(954) 463-2444 Facsimile
mpiper@jambg.com
**Attorneys for City of Doral**

**Harriet R. Lewis, Esq./Gary Oldehoff, Esq.**
Lewis, Stroud & Deutsch, P.L.
1900 Glades Road, Ste 251
Boca Raton, Florida 33431
(561) 826-2800 Telephone
(561) 826-2828 Facsimile
hlewis@lsdlaw.com
**Attorneys for Mayor Juan Carlos Bermudez**